ANTONIA M. APPS
REGIONAL DIRECTOR
Sheldon L. Pollock
Gerald Gross
Preethi Krishnamurthy
Christine D. Ely
Benjamin S. Mishkin
**Attorneys for Plaintiff**
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
(212) 336-0116 (Krishnamurthy)
KrishnamurthyP@sec.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>NATIVE AMERICAN ENERGY GROUP, INC., JOSEPH D'ARRIGO, and DAVID HUDZIK,<br><br>Defendants,<br><br>-and-<br><br>LISA D'ARRIGO and LORRAINE ALEJANDRO,<br><br>Relief Defendants. | **COMPLAINT**<br><br>23 Civ. 4455 (    )<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Native American Energy Group, Inc. ("Native American Energy"), Joseph D'Arrigo ("D'Arrigo"), and David Hudzik ("Hudzik") (collectively, "Defendants") and Relief Defendants Lisa D'Arrigo ("Lisa") and Lorraine Alejandro ("Alejandro") (collectively, "Relief Defendants"), alleges as follows:

# SUMMARY

1. Between October 2014 and August 2020, Defendants made material misrepresentations to investors when offering Native American Energy common stock and unlawfully offered and sold the stock without a registration statement which was required under the federal securities laws. During that period, Native American Energy raised at least $3.43 million from at least 100 investors across the country.

2. Defendants solicited investors with a misleading subscription agreement that described the subscription as an "investment in the Company." In reality, D'Arrigo, the Chief Executive Officer of Native American Energy, and the company's stock salespersons pocketed approximately 70 percent of the funds raised from investors.

3. Additionally, Hudzik, a consultant for the company from January 2017 through December 2018, falsely told investors that he would only receive a commission on any profits earned after an investor sold their Native American Energy shares. In fact, Hudzik received commissions of 20 to 30 percent within days of the investments he sold. The commission payments were delivered to Hudzik's romantic partner, Relief Defendant Alejandro.

4. D'Arrigo also misappropriated approximately $958,500 in investor proceeds for his personal benefit, using the proceeds to withdraw cash for himself, to wire money to himself and his wife, Relief Defendant Lisa, to pay personal credit card bills, and to make numerous purchases at restaurants, gas stations, grocery stores, drug stores, and other retailers.

5. Defendants also violated registration provisions of the securities laws. Defendants offered and sold Native American Energy common stock to investors when no registration statement was in effect and no exemption from registration applied. Moreover, Hudzik acted as an unregistered broker because, among other things, he solicited investors, provided them subscription agreements and wiring instructions, and received transaction-based compensation (compensation

based on the amount of money he raised from investors).

## VIOLATIONS

6.      By virtue of the foregoing conduct and as alleged further herein, Defendants Native American Energy, D'Arrigo, and Hudzik have violated Sections 5(a) and (c) and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Hudzik has also violated Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)].

7.      Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.      The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

9.      The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants to disgorge all ill-gotten gains they received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting D'Arrigo and Hudzik from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act

Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; (e) permanently prohibiting D'Arrigo and Hudzik from participating in any offering of a penny stock, pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; (f) ordering Relief Defendants to pay, with prejudgment interest, all ill-gotten gains by which they were unjustly enriched, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; and (g) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

11. Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

12. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendants may be found in, are inhabitants of, or transact business in the Eastern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including Defendants' solicitation of investors. For example, Hudzik, a resident of this District, solicited investors, including investors who also reside in this District, in person and by telephone, email, and text message from this District.

## DEFENDANTS

13. **Native American Energy**, formed in 2005, is a Delaware corporation with its principal place of business in Queens, New York. The company describes itself as "an energy

resource development and management company." Native American Energy purportedly had active field operations on the Fort Peck Indian Reservation in Montana from 2005 to 2013 and, from 2008 to 2011, sold oil from five wells that it operated to Shell Trading (US) Company. Native American Energy's alleged well operations ceased in or around 2013. Since then, the company has not had any business operations and has not generated any revenue. In 2020, the Connecticut Banking Commissioner issued an order imposing a $100,000 fine upon Native American Energy for violating the antifraud provisions in Section 36b-4(a) of the Connecticut Uniform Securities Act.

14. **D'Arrigo**, age 61, is a resident of East Stroudsburg, Pennsylvania. D'Arrigo has served as the Chief Executive Officer and a Director of Native American Energy since 2005. He is a co-founder of the company. Between August and December 1999 and again between March 2004 and July 2005, D'Arrigo was a registered representative at Commission-registered broker-dealers and held Series 7 and 63 securities licenses. In 2020, the Connecticut Banking Commissioner issued an order imposing a $100,000 fine upon D'Arrigo for violating the antifraud provisions in Section 36b-4(a) of the Connecticut Uniform Securities Act.

15. **Hudzik**, age 49, is a resident of East Meadow, New York. Hudzik worked as a consultant for Native American Energy from January 2017 through December 2018. Between July 1996 and July 2016, Hudzik was a registered representative at a series of Commission-registered broker-dealers and held Series 7 and 63 securities licenses. Hudzik has not been registered as an associated person with a broker-dealer since July 2016 and has never himself been registered with the Commission as a broker-dealer or in any other capacity.

**RELIEF DEFENDANTS**

16. **Lisa**, age 60, is a resident of East Stroudsburg, Pennsylvania, and is D'Arrigo's wife. At D'Arrigo's direction, Lisa received approximately $32,700 in investor proceeds from Native American Energy.

17.     **Alejandro**, age 46, is a resident of East Meadow, New York, and is Hudzik's romantic partner. At Hudzik's request, D'Arrigo directed that Native American Energy transfer approximately $70,000 in investor proceeds to Alejandro.

## FACTS

I.  **DEFENDANTS OFFERED AND SOLD NATIVE AMERICAN ENERGY COMMON STOCK.**

18.     Although Native American Energy effectively ended its business operations in or around 2013, the company continued to solicit investors to purchase its common stock and, in so doing, raised at least $3.43 million from at least 100 investors across the country between October 2014 and August 2020 (the "Relevant Period").

19.     Among other things, during the Relevant Period, the company, through D'Arrigo, hired several formerly licensed registered representatives, including Hudzik, to identify and solicit investors.

20.     D'Arrigo, Hudzik, and the other stock salespersons solicited investors in person and by telephone, email, and text message.

21.     To purchase shares of Native American Energy common stock, investors provided funds to the company by check or wire.

22.     Investors also completed a subscription agreement in which they, among other things, warranted their status as an "accredited investor."

23.     Pursuant to Rule 501 of Regulation D under the Securities Act [17 C.F.R. § 230.501], an accredited investor is someone who: (i) has a net worth over $1 million, excluding primary residence (individually or with a spouse or partner); (ii) has an income over $200,000 (individually) or $300,000 (with a spouse or partner) in each of the prior two years, and reasonably expects the same income level in the current year; (iii) holds in good standing a Series 7, 65, or 82 securities license; (iv) is a director, executive officer, or general partner of the company selling the securities

(or of a general partner of that company); (v) is a "family client" of a "family office" that qualifies as an accredited investor; or (vi) for investments in a private fund, is a "knowledgeable employee" of the fund.

24. During the Relevant Period, Native American Energy and its representatives did not limit their solicitations to individuals who they believed would qualify as accredited investors.

25. The company and its representatives also did not take any steps to verify investors' accreditation.

26. In addition to not verifying investors' accreditation, there was no registration statement with the Commission in effect in connection with the company's offers and sales of common stock.

27. Moreover, no valid exemption from registration existed with respect to the company's offers and sales of its common stock.

28. Further, the company and its representatives did not disclose to investors that Native American Energy's Chief Financial Officer is subject to an order of the Commission entered in 2005 pursuant to Exchange Act Section 15(b) [15 U.S.C. § 78o(b)], which permanently bars him from association with any broker or dealer.

29. During the Relevant Period, Native American Energy did not have any sources of income other than money raised from investors.

30. During the Relevant Period, D'Arrigo also transferred to himself and Lisa, withdrew in cash, and spent on personal expenses approximately $958,500 in investor proceeds, representing approximately 28 percent of the total amount raised from investors, as described in more detail below in Section III.

31. D'Arrigo transferred an additional approximately $1.46 million to the company's stock salespersons, representing more than 42 percent of the total amount raised from investors.

7

## II. DEFENDANTS MADE MATERIAL MISREPRESENTATIONS TO INVESTORS.

### A. Defendants Solicited Investors with a Misleading Subscription Agreement.

32. The subscription agreement Defendants provided to investors contained false and misleading statements regarding the use of investor proceeds.

33. The subscription agreement described the subscription as an "investment in the Company."

34. Yet the subscription agreement did not disclose that the majority of investor proceeds—approximately 70 percent—would be used to compensate D'Arrigo and the company's stock salespersons.

35. Indeed, investors were unaware that their investments would largely be used to pay D'Arrigo and the company's stock salespersons.

36. Investors instead believed that their investments would be used to fund company operations and development.

37. D'Arrigo and Hudzik provided the subscription agreement to investors, along with wiring instructions to pay for the shares purchased.

38. D'Arrigo also provided the subscription agreement to the company's stock salespersons for use in soliciting investors.

39. In addition, D'Arrigo approved the subscription agreement's use and signed it on behalf of the company.

40. D'Arrigo knew or recklessly disregarded that: (i) the subscription agreement misleadingly described the subscription as an "investment in the Company"; (ii) the majority of investor proceeds would be used to pay himself and the company's stock salespersons; and (iii) investors were unaware of those payments.

41. Hudzik likewise knew or recklessly disregarded that the subscription agreement was

8

misleading, as he knew or recklessly disregarded that he would receive a large portion of the investments he sold and that investors were unaware their investments would be used in that manner.

### B. Hudzik Deceived Investors Regarding His Commissions.

42. In 2017 and 2018, Hudzik solicited friends, acquaintances, and family members to purchase shares of Native American Energy common stock and, in so doing, discussed the merits of the investment with them.

43. For example, Hudzik told investors that Native American Energy was pursuing several projects and potential acquisitions that would make the company more valuable and that its stock price would ultimately increase from $0.10 per share to $2.00 or more per share.

44. During that period, Hudzik was not registered with the Commission as a broker or dealer or associated with a registered broker or dealer.

45. Hudzik generally received a commission of 20 to 30 percent on the investments he sold, including the following investments:

| Date of Investment | Amount Invested | Date(s) of Commission Payment | Commission Amount | Commission Percentage |
|---|---|---|---|---|
| February 9, 2017 | $25,000 | February 10, 2017<br>February 13, 2017 | $6,250 | 25% |
| February 22, 2017 | $50,000 | February 23-24, 2017 | $12,500 | 25% |
| March 13, 2017 | $25,000 | March 14, 2017<br>March 16, 2017 | $6,250 | 25% |
| June 22, 2017 | $5,000 | June 26, 2017 | $1,500 | 30% |
| July 6, 2017 | $50,000 | July 10, 2017 | $15,000 | 30% |
| November 21, 2017 | $5,000 | November 22, 2017 | $1,000 | 20% |
| November 28, 2017 | $5,000 | December 1, 2017 | $1,500 | 30% |
| December 15, 2017 | $5,000 | December 18, 2017 | $1,000 | 20% |
| December 18, 2017 | $2,500 | December 20, 2017 | $500 | 20% |
| January 24, 2018 | $25,000 | February 6, 2018 | $5,000 | 20% |

| Date of Investment | Amount Invested | Date(s) of Commission Payment | Commission Amount | Commission Percentage |
|---|---|---|---|---|
| March 6, 2018 | $25,000 | March 7, 2018 | $5,000 | 20% |
| April 11, 2018 | $10,000 | April 17, 2018 | $2,000 | 20% |
| May 22, 2018 | $25,000 | May 25, 2018 | $5,000 | 20% |
| June 26, 2018 | $25,000 | June 27, 2018<br>June 29, 2018 | $7,500 | 30% |
| **TOTAL** | **$282,500** | | **$70,000** | **~24.8%** |

46. Each commission payment—$70,000 in total—was delivered to Hudzik's romantic partner, Alejandro, as Hudzik purportedly did not have any bank account at the time.

47. Alejandro did not provide any consideration in return for receiving these commission payments.

48. Neither Hudzik nor the subscription agreement he provided to investors disclosed that he would receive these commissions.

49. Instead, Hudzik falsely told most investors he solicited that he would only receive a commission on any profits earned after the investor sold their Native American Energy shares on the open market.

50. Hudzik told one investor that he would receive an up-front commission, but did not disclose the percentage.

51. For other investors, Hudzik did not say anything about commissions.

52. When Hudzik solicited investors to purchase shares of Native American Energy common stock, he knew or recklessly disregarded that he would receive the above-described commissions and that investors were unaware of those commissions.

### III.   D'ARRIGO MISAPPROPRIATED INVESTOR PROCEEDS.

53. During the Relevant Period, Native American Energy had two bank accounts in its name, and both of them received investor proceeds. D'Arrigo alone controlled those accounts.

54. Drawing upon that authority, D'Arrigo misappropriated approximately $958,500 in investor proceeds for his personal use during the Relevant Period.

55. Specifically, D'Arrigo transferred to himself, or withdrew in cash, approximately $860,300.

56. D'Arrigo also transferred approximately $32,700 to his wife, Lisa.

57. Lisa did not provide any consideration in exchange for her receipt of these funds.

58. In addition, D'Arrigo used approximately $65,500 to pay personal credit card bills and to make numerous purchases at restaurants, gas stations, grocery stores, drug stores, and other retailers, including TJ Maxx, Ulta Beauty, Target, Home Depot, Walmart, Big Lots, Men's Wearhouse, and Cohen's Fashion Optical.

59. D'Arrigo knew or recklessly disregarded that he was engaged in manipulative, deceptive, and fraudulent conduct by, among other things, soliciting investors with a misleading subscription agreement that described the subscription as an "investment in the Company," transferring investor proceeds to himself and Lisa, withdrawing investor proceeds in cash, and spending investor proceeds on personal expenses.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)**
**(All Defendants)**

60. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 59.

61. Defendants, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material

fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

62. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (All Defendants)

63. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 59.

64. Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

65. By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
### Violations of Securities Act Sections 5(a) and (c)
### (All Defendants)

66. The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 29, paragraph 32, paragraphs 37 through 39, paragraphs 42 through 45, paragraphs 48 through 51, and paragraph 53.

67. Defendants, directly or indirectly, singly or in concert, (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or for delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; or (iii) made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

68. By reason of the foregoing, Defendants violated and, unless enjoined, will again violate, Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and 77e(c)].

## FOURTH CLAIM FOR RELIEF
### Violations of Exchange Act Section 15(a)
### (Hudzik)

69. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 3, paragraphs 5 through 28, paragraphs 31 through 37, and paragraphs 41 through 52.

70. Hudzik, as a natural person not associated with a broker or dealer which is a person other than a natural person, made use of the mails or any means or instrumentality of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, any security without being registered with the Commission as a broker-dealer.

71. By reason of the foregoing, Hudzik violated, and, unless enjoined, will again violate Exchange Act Section 15(a) [15 U.S.C. § 78o(a)].

13

## FIFTH CLAIM FOR RELIEF
## Unjust Enrichment
## (Relief Defendants)

72. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 59.

73. Lisa and Alejandro received approximately $32,700 and $70,000, respectively, in investor proceeds from Native American Energy.

74. Relief Defendants have no legitimate claim to these ill-gotten gains.

75. Relief Defendants obtained the funds under circumstances in which it is not just, equitable, or conscionable for them to retain the funds.

76. Relief Defendants have therefore been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Native American Energy and its agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Sections 5(a) and (c) and 17(a) [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Permanently enjoining D'Arrigo and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Sections 5(a) and (c) and 17(a) [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**III.**

Permanently enjoining Hudzik and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Sections 5(a) and (c) and 17(a) [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Exchange Act Sections 10(b) and 15(a) [15 U.S.C. §§ 78j(b) and 78o(a)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**IV.**

Ordering Defendants and Relief Defendants to disgorge all ill-gotten gains they received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

**V.**

Ordering Defendants to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**VI.**

Permanently prohibiting D'Arrigo and Hudzik from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**VII.**

Permanently prohibiting D'Arrigo and Hudzik from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act

Section 21(d)(6) [15 U.S.C. § 78u(d)(6)];

## VIII.

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated: New York, New York
June 16, 2023

*/s/ Antonia Apps*

ANTONIA M. APPS
REGIONAL DIRECTOR
Sheldon L. Pollock
Gerald Gross
Preethi Krishnamurthy
Christine D. Ely
Benjamin S. Mishkin
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
(212) 336-0116 (Krishnamurthy)
KrishnamurthyP@sec.gov