UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

U.S. SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

– against –

NATIVE AMERICAN ENERGY GROUP, INC., JOSEPH D'ARRIGO, DAVID HUDZIK, LISA D'ARRIGO, and LORRAINE ALEJANDRO,

Defendants.

---

**REPORT AND RECOMMENDATION**

23-cv-4455 (NGG) (PK)

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff U.S. Securities and Exchange Commission (the "Commission") brought this action against Defendants Native American Energy Group, Inc. ("NAEG"), Joseph D'Arrigo (together with NAEG, "Defaulting Defendants"), Lisa D'Arrigo, David Hudzik, and Lorraine Alejandro, alleging violations of the Securities Act, 15 U.S.C. §§ 77a et seq. (1933) (the "Act"), the Securities Exchange Act, 15 U.S.C. §§ 78a et seq. (1934) (the "Exchange Act"), and Commission Regulations promulgated thereunder, 17 C.F.R. §§ 200.1 et seq. (2011) (the "Regulations"). (Compl., Dkt. 1.) Before the Court on referral from the Honorable Nicholas G. Garaufis is Plaintiff's Motion for Default Judgment ("Motion," Dkt. 67), seeking default judgment against NAEG and Mr. D'Arrigo. (Feb. 3, 2026 Order.) For the reasons stated herein, I respectfully recommend that the Motion be granted and relief be awarded as detailed below.

## BACKGROUND

### I. Factual Background

The following facts are taken from the uncontested allegations in the Complaint and are assumed to be true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

NAEG is a Delaware corporation with a principal place of business in Queens, New York and describes itself as an "energy resource development and management company" that purportedly had active field operations on the Fort Peck Indian Reservation in Montana and sold oil from its wells. (Compl. ¶ 13.) It ceased any well operations and stopped generating revenues in or around 2013. (*Id.*)

Joseph D'Arrigo is a co-founder of NAEG and has served as its Chief Executive Officer ("CEO") and director since 2005. (*Id.* ¶ 14.) Between August and December 1999 and again between March 2004 and July 2005, D'Arrigo was a registered representative at Commission-registered broker-dealers and held Series 7 and 63 securities licenses. (*Id.*)

Despite ending its business operations, NAEG continued to solicit investors to purchase its common stock from October 2014 to August 2020 ("Relevant Period"). (*Id.* ¶¶ 1, 18, 26–27.) Through Mr. D'Arrigo, NAEG hired several formerly licensed registered representatives, including Mr. Hudzik, to identify and solicit investors by telephone, email, and text messages. (*Id.* ¶¶ 19–20.) NAEG raised at least $3.43 million from at least 100 investors, and investor proceeds were its only source of income during the Relevant Period. (*Id.* ¶¶ 18, 29.)

NAEG did not have a registration statement with the Commission in connection with its officers and sales of common stock and did not qualify for any exemptions. (*Id.* ¶¶ 26–27.)

Defaulting Defendants disseminated "subscription agreements" to investors with false and misleading statements about the use of investor proceeds; the subscription agreements described the

subscription as an "investment in the Company," *i.e.*, NAEG (*id.* ¶ 33), and did not disclose that most of the investor funds would be used to pay Mr. D'Arrigo and NAEG's salespersons (*id.* ¶40).

During the Relevant Period, Mr. D'Arrigo provided subscription agreements to NAEG salespersons for use in soliciting investors, approved the subscription agreements' use and signed them on behalf of NAEG, and provided the subscription agreements to investors with wiring instructions to pay for shares purchased. (*Id.* ¶¶ 37–39.) Mr. D'Arrigo withdrew, spent, or transferred approximately $958,500, which was about 28% of the total investor money, to himself and his wife Lisa D'Arrigo (*id.* ¶ 30). He also transferred approximately $1.46 million, which was more than 42% of the total investor money, to NAEG's salespersons. (*Id.* ¶ 31.)

## II. Procedural Background

The Commission filed this action on June 16, 2023. (*See generally* Compl.) On July 21, 2023, the Summons and Complaint were served on Defaulting Defendants, and proof of service was filed with the Court. (Dkts. 8–9.)

The Complaint alleges five violations:

> (1) Count 1: Violations of Securities Act Section 17(a), 15 U.S.C. § 77q(a);
>
> (2) Count 2: Violations of Exchange Act Section 10(b) and Rule 10b-5, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5;
>
> (3) Count 3: Violations of the Securities Act Sections 5(a) and 5(c), 15 U.S.C. §§ 77e(a) and 77e(c);
>
> (4) Count 4: Violations of the Exchange Act Section 15(a), 15 U.S.C. § 78o(a); and
>
> (5) Count 5: Unjust Enrichment

(¶¶ 60–76.) The Complaint alleges that NAEG, Mr. D'Arrigo, and Mr. Hudzik violated Counts 1 through 3, Mr. Hudzik violated Count 4, and Ms. D'Arrigo and Ms. Alejandro violated Count 5. (*Id.*)

On August 8, 2023, the Court granted Mr. D'Arrigo's request for a 30-day extension of time for him and NAEG to answer the Complaint and to retain counsel. (Dkt. 14.) On September 15, 2023, Mr. D'Arrigo requested an additional 21-day extension to answer the Complaint. (Dkt. 16.) On September 18, 2026, the Court granted the request and extended NAEG's and Mr. D'Arrigo's deadlines to answer or otherwise respond to the Complaint to October 2, 2023.

On October 26, 2023, NAEG and Mr. D'Arrigo had not yet responded or otherwise responded to the Complaint. An initial conference was held at which Mr. D'Arrigo stated that he had secured funding for NAEG, which would allow him to retain counsel for himself and NAEG, as well as for all other Defendants in the case. (Tr. of Oct. 26, 2023 3:5–20:2, Ex. D to Zetlin-Jones Decl.) Mr. D'Arrigo also stated that NAEG's funding was "imminent," would be secured by January 20, 2024 through a "signed agreement with Singapore," and that the date of its receipt is a "certainty." (*Id.* 8:22–9:8.) The Court thereafter extended the deadlines for all Defendants to answer to January 31, 2024. (Oct. 26, 2023 Minute Entry & Order.)

On January 30, 2024, Mr. D'Arrigo filed a motion seeking to stay the action and requesting that no action be taken until the status conference to be held on February 15, 2024 (Motion to Stay, Dkt. 19). Mr. D'Arrigo stated that NAEG had not received the funds for retaining counsel but that the "process of funding has begun" and that he expected NAEG to receive it "shortly." (*Id.*) In the Motion to Stay, Mr. D'Arrigo discussed the possibility of retaining attorneys for the purpose of discussing a possible "buy back event and the shareholders compensation" "instead of simply refunding them their money." (*Id.*) On February 2, 2024, the Court granted the Motion to Stay, staying the action until the February 15, 2024 conference.

At the status conference on February 15, 2024, Mr. D'Arrigo "informed the Court that he has not retained counsel, and has been attempting to get funding as an 'exit strategy' for shareholders and

that "he would like to settle this case without the need to hire a lawyer." (Minute Entry & Order.) He also stated that "this case has no merit" and that Plaintiff's staff had "made up stuff." (*See* Feb. 15, 2024 Hr'g Tr. 5:1-6:7, Ex. E to Zetlin-Jones Decl.)

The Court informed Defendants that if settlement negotiations were "not successful," "they must file answers to the Complaint." (Feb. 15, 2024 Minute Entry & Order.) It also warned that "Native American Energy Group, Inc. must retain a lawyer in order to appear or file an answer, or it will be found in default." (*Id.*) The Court further stayed the time to file answers in order to afford the parties an opportunity to engage in meaningful settlement discussions. (*Id.*)

On April 17, 2024, Mr. D'Arrigo filed his answer (Dkt. 25) and an answer purportedly on behalf of NAEG (Dkt. 27). Because Mr. D'Arrigo is not an attorney and could not appear on NAEG's behalf, the Court granted Plaintiff's motion to strike NAEG's answer. (Dkt. 45.)

The Court entered a Scheduling Order setting deadlines for the completion of discovery. (Dkt. 39) Plaintiff notified the Court on October 4, 2024 (Dkt. 46) that Mr. D'Arrigo did not respond to discovery requests, and on October 23, 2024, the Court ordered Mr. D'Arrigo to respond to Plaintiff's interrogatories and document requests and warned him that if he failed to comply with the Court's orders, he would be found in default. No response was filed. On November 22, 2024, the Court directed Mr. D'Arrigo to respond in writing by December 6, 2024, showing cause why he should not be found in default for failure to comply with the Court's October 23, 2024 Order. On December 13, 2024, the Court held a show cause hearing at which Mr. D'Arrigo failed to appear. Based on his failure to appear and to respond to the Court's November 22, 2024 Order, the Court found Mr. D'Arrigo in default.

The Clerk entered a certificate of default against NAEG on September 26, 2025 (Dkt. 57.) and against Mr. D'Arrigo on December 1, 2025. (Dkt. 62.)

On December 11, 2025, the Court entered a final judgment against Mr. Hudzik pursuant to a settlement agreement between him and Plaintiff. (Dkt. 63; *see also* Pl. Mot. to Approve Consent Judgment, Dkt. 60). On January 29, 2026 and April 23, 2026, upon Plaintiff's motion, the Court dismissed the claims against Lorraine Alejandro and Lisa D'Arrigo, respectively. (Dkts. 66, 77.)

On January 30, 2026, Plaintiff filed the Motion, seeking default judgment against NAEG and Mr. D'Arrigo. The Motion includes a memorandum of law (Pl. Mem. for Motion, Dkt. 70), Declaration of Counsel David Zetlin-Jones ("Zetlin-Jones Decl.," Dkt. 69), Declaration of Accountant Diego Brucculeri ("Brucculeri Decl.," Dkt. 70), NAEG's bank statements (Dkt. 70-2), and a spreadsheet analyzing NAEG's transfers to Mr. and Ms. D'Arrigo's bank accounts (Dkt. 70-1). On January 30, 2026, the Motion and documents in support were served on Defaulting Defendants, and proof of service was filed with the Court. (Dkt. 71.)

## DISCUSSION

### I. Legal Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

Plaintiff must demonstrate proper service of the summons and complaint, *see Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sep. 20, 2013), and establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2. *See* L.R. 7.1, 55.2. The Court may also "assure itself that it has personal jurisdiction over the

defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation omitted).

Moreover, the Court must also determine whether Plaintiff's "allegations establish [the defendant's] liability as a matter of law." *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Mickalis*, 645 F.3d at 137. In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor . . . ." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R. & R. adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sep. 23, 2011), *R. & R. adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction and Default

### *A. Subject Matter Jurisdiction*

The Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. §§ 77a et seq. and 15 U.S.C. §§ 78a et seq.

### *B. Personal Jurisdiction*

"[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020) (internal quotations omitted).

The Court has general jurisdiction over NAEG because NAEG's principal place of business is in Queens, New York (Compl. ¶ 13), and Plaintiff properly served NAEG by personally serving copies of the summons and Complaint to its CEO, Mr. D'Arrigo (*see also* Affs. of Service, Dkts. 8–9); Fed. R. Civ. P. 4(h)(1)(B). *See Daimler AG*, 571 U.S. at 137. Although Mr. D'Arrigo is domiciled in Pennsylvania (Compl. ¶ 13), *Daimler AG*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."), "the actions of the defendant may amount to a legal submission to the jurisdiction of the court . . . ." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 704–05 (1982). "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex–Exploración y Producción*, 832 F.3d 92, 102 (2d Cir. 2016) (quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)).

Here, Mr. D'Arrigo appeared at multiple court proceedings, during which he repeatedly requested multiple extensions of time and argued that the case has no merit. As a result of those extension requests (*see* Dkts. 15, 16; *see also* Oct. 26, 2023 Minute Entry & Order) and the Motion to

Stay, the Court extended his deadline to answer the Complaint from August 10, 2023 to April 19, 2024. When Mr. D'Arrigo filed his answer, he responded substantively to Plaintiff's allegations and did not assert a lack of personal jurisdiction defense. (Dkt. 25.) Thus, Mr. D'Arrigo's actions "amount to a legal submission" to this jurisdiction, *see Ins. Corp. of Ireland, Ltd.*, 456 U.S. 694 at 704–05, and his failure to assert a lack of personal jurisdiction defense constitutes waiver, *see* Fed. R. Civ. P. 12(h)(1)(B)(ii) (A party "waives" a personal jurisdiction defense by either failing to make it a motion under this rule or failing to include "it in a responsive pleading."); *cf. V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 359 (S.D.N.Y. Sep. 30, 2012) (finding there was no waiver because defendant "pleaded lack of personal jurisdiction in its Answer").

Accordingly, I find that the Court has personal jurisdiction over NAEG and Mr. D'Arrigo.

## III. Defendants' Default

NAEG is in default because its answer was stricken as a result of its failure to appear through counsel as required for corporations. *See Latttanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007).

Mr. D'Arrigo filed an answer, but despite multiple warnings, he failed to comply with the Court's Orders to respond to discovery requests (Oct. 23, 2024 Minute Entry & Order) and to appear at required court proceedings (November 22, 2024 Minute Entry & Order). After failing to respond to an Order to Show Cause why he should not be held in default, the Court found Mr. D'Arrigo in default for willingly disregarding Court orders. (Dec. 13, 2024 Minute Entry & Order.) Mr. D'Arrigo has not appeared in this action since attending the hearing on October 23, 2024.

NAEG and Mr. D'Arrigo are, thus, properly found to be in default.

## IV. Procedural Compliance

As part of this Motion and in compliance with the Local Civil Rules, Plaintiff included a Notice of Motion (Dkt. 67), *see* L.R. 7.1(a)(1); a Memorandum of Law in Support of the Motion (Dkt. 68), *see*

L.R. 7.1(a)(2); a declaration showing that the Clerk has entered default and that Defendants are not incompetent or minors (69), *see* L.R. 55.2(a)(1); Proposed Default Judgment Orders detailing the proposed judgment to be entered (Dkts. 67-1, 67-2), *see* L.R. 55.2(a)(2); proof of having mailed the motion papers and the Clerk's Certificate of Default to Defaulting Defendants at Mr. D'Arrigo's home address and NAEG's last known business address (Aff. of Service, Dkt. 71.), *see* L.R. 55.2(a)(3); and a statement of damages with supporting documentation affirmed by Plaintiff's supervisory staff with personal knowledge (Diego Brucculeri Decl. ("Bruccerli Decl."), Dkt. 70; Giglio Decl.), *see* L.R. 55.2(c).

## V. Analysis

Plaintiff seeks default judgment against NAEG and Mr. D'Arrigo for Counts 1 and 2 for violating anti-fraud provisions of the Act and Exchange Act and Count 3 for violating registration requirements of the Act.

### *A. Anti-Fraud Provisions*

To prove liability under Section 17(a)(1) of the Act, 15 U.S.C. § 77q(a), and Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, the plaintiff must prove that the defendant (1) made a material misrepresentation or a material omission as to which he had a duty to speak or used a fraudulent device or scheme that was (2) with scienter; (3) in connection with the purchase or sale of securities. *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *see also SEC v. Rio Tinto PLC*, 41 F. 4th 47, 49 (2d Cir. 2022) (concluding that Section 17a of the Act and Rule 10b-5 prohibit a "device" or "scheme" "to defraud") (citing *Lorenzo v. SEC*, 587 U.S. 71, 78 (2019)). Sections 17(a)(2) and 17(a)(3) require essentially the same elements as 17(a)(1) except only negligence is required, not scienter. *Monarch Funding Corp.*, 192 F.3d at 308 (citing *Aaron v. SEC*, 446 U.S. 680 (1980)).

A misrepresentation occurs when a false or misleading assertion is made. BLACK'S LAW DICTIONARY (12th ed. 2024). An omission occurs when "disclosure of information necessary to ensure that statements already made are clear and complete" is not made. *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 264 (2024) (holding pure omissions are not actionable under Rule 10b-5(b) of Exchange Act). Misrepresentations or omissions are material when reasonable investors would consider them important in making investment decisions. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988); *SEC v. Premier Links, Inc.*, No. 14-CV-7375 (CBA) (ST), 2017 WL 7792702 at *5 (E.D.N.Y. Sept. 14, 2017), *R. & R. adopted*, No. 14-CV-7375 (CBA) (ST), 2018 WL 1064575 (E.D.N.Y. Feb. 23, 2018) (citation modified) (material misrepresentations occur when there is a "substantial likelihood that disclosure of the omitted fact would have been viewed by [a] reasonable investor as having significantly altered the 'total mix' of information made available").

NAEG's and Mr. D'Arrigo assertions to NAEG's investors that their subscriptions agreements were investments in the company were false and misleading. (*See id.* ¶¶ 32–36.) Nearly 70% of their investment funds were siphoned off to NAEG's officers or salespersons, instead of being used to fund company operations and development, as NAEG and Mr. D'Arrigo led investors to believe. (*Id.*) Such misrepresentations were material because NAEG's investors purchased subscription agreements based on their understanding that their investments would be used for NAEG's company operations, not for Mr. D'Arrigo's and the NAEG stock salespersons' personal use. (*See id.* ¶¶ 32–36.) Multiple investors stated they would not have bought NAEG common stock had they known that NAEG and Mr. D'Arrigo would misappropriate their investment funds. (*See* Pl. Mem. at 9; *see also* Investor Declarations, Exs. F, G, H to Zetlin-Jones Decl.) Thus, NAEG and Mr. D'Arrigo's misrepresentations and omissions were important to the investors in deciding whether to invest in NAEG. *See Basic Inc.*, 485 U.S. at 231–32; *see also SEC v. Research Automation Corp.*, 585 F.2d

31, 35–36 (2d Cir. 1978) ("What reasonable investor would not wish to know that money raised by stock sales would not be used for working capital but be diverted to [the company's] officers?").

NAEG and Mr. D'Arrigo also "used a fraudulent device or scheme" and thus are liable under what court have characterized as "scheme liability". *See* Sections 17(a)(1) and (a)(3), 15 U.S.C. § 77q(a)(1) and (3), of the Act; Section 10(b), 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R. § 240.10b-5(a) and (c), of the Exchange Act. *See also SEC v. Jean-Pierre*, No. 12 Civ. 8886 (LGS), 2015 WL 1054905 at *8 (S.D.N.Y. Mar. 9, 2015). "To prove scheme liability, the SEC must show that defendants: (1) committed a deceptive or manipulative act; (2) in furtherance of the alleged scheme to defraud; (3) with scienter." *SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 445 (E.D.N.Y. 2016) (citation modified).

NAEG and Mr. D'Arrigo committed a deceptive or manipulative act because they induced investors to purchase NAEG stock under the false pretense that their investments would be used for company operations and development. Moreover, Mr. D'Arrigo approved the investor subscription agreements' use and signed them on NAEG's behalf. (Compl. ¶ 39). Accordingly, NAEG's and Mr. D'Arrigo's actions were in furtherance of the alleged scheme to defraud investors because most of the money obtained from NAEG investments was eventually diverted to and misappropriated by an officer and salespersons of NAEG for personal use rather than used for their stated purpose. *See SEC v. Laura*, 680 F. Supp. 3d 204, 233 (E.D.N.Y. 2023) ("It is well established that an undisclosed intent to misappropriate funds is sufficient to establish scheme liability on a motion for summary judgment").

Scienter means "intent to deceive, manipulate, or defraud; or at least knowing misconduct" and is a question of fact. *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir.1996). The defendant's knowledge or recklessness satisfies the scienter requirement. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168–69 (2d Cir. 2000). "Representing information as true while knowing it is not,

recklessly misstating information, or asserting an opinion on grounds so flimsy as to belie any genuine belief in its truth, are all circumstances sufficient to support a conclusion of scienter." *Id.* (citing *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 424 (S.D.N.Y. 2007), *aff'd sub nom. SEC v. Altomare*, 300 Fed. App'x 70 (2d Cir. 2008)). "Recklessness is at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Shoengood*, 2023 WL 7000984, at *7 (cleaned up). Courts have inferred scienter where "the complaint sufficiently alleges that the defendants (1) benefited in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; [or] (3) knew facts or had access to information suggesting that their public statements were not accurate…." *S. Cherry St. LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009).

NAEG's and Mr. D'Arrigo acted with scienter because they "represent[ed] information as true while knowing it [was] not." *See Ganino at* 168–69 (2d Cir. 2000). Both NAEG's and Mr. D'Arrigo knew that NAEG had ceased company operations in or around 2013, yet from October 2014 to August 2020, they continued to solicit investors to purchase NAEG's common stock. (Compl. ¶ 18.) NAEG's and Mr. D'Arrigo actions were reckless because taking funds for personal use rather than investing in the company's operations as they promised investors is "highly unreasonable" and "represents an extreme departure from the standards of ordinary care."

Moreover, NAEG's and Mr. D'Arrigo's scienter can be inferred because they "benefited in a concrete and personal way from the purported fraud" by diverting investor funds to Mr. D'Arrigo, Ms. D'Arrigo, and NAEG salespersons. NAEG and Mr. D'Arrigo also knew their public statements to investors were not accurate because NAEG had ceased company operations. *See id.* Moreover, as NAEG's CEO and director, Mr. D'Arrigo's individual actions of misappropriating money to himself,

Ms. D'Arrigo, and NAEG salespersons and signing subscription agreements with material misrepresentations demonstrate scienter and can be attributed to NAEG. *See Monarch Funding Corp.*, 192 F.3d at 308; *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006) ("Courts have readily attributed the scienter of management-level employees to corporate defendants.").

The third element that the defendant's actions were done "in connection with the purchase or sale of securities" is established "where plaintiff's claims 'necessarily allege,' 'necessarily involve,' or 'rest on' the purchase or sale of securities." *United States v. Naftalin*, 441 U.S. 768, 773 (1979). "It is enough that the scheme to defraud and the sale of securities coincide." *Shoengood*, 2023 WL 7000984, at *7 (citing *SEC v. Zanford*, 535 U.S. 813, 819–20 (2002)). "The Second Circuit has broadly construed the phrase 'in connection with,' interpreting the Congressional intent underlying the phrase to mandate only that the act complained of somehow induced the purchaser to purchase the security at issue." *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 537 (2d Cir. 1999) (citations omitted).

The "in connection with" element is satisfied because NAEG and Mr. D'Arrigo made misrepresentations for the specific purpose of inducing investors to purchase of NAEG stock. *See Press*, 166 F.3d at 537.

Finally, the plaintiff must show that the defendants used "any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange" in connection with their misconduct. 15 U.S.C. §§ 78j; *see* 15 U.S.C. §§ 77q(a). "[I]f the defendant used some means of interstate communication (such as a telephone call), in some phase of the transaction," that satisfies the interstate commerce element. *S.E.C. v. Stanard*, 2009 WL 196023, at *25 (S.D.N.Y. Jan. 27, 2009)

NAEG and Mr. D'Arrigo employed the instrumentality of interstate commerce by using telephone calls, emails, and text messages to induce investors to sign subscription agreements and purchase NAEG common stock (Compl. ¶¶ 18, 20–21).

Accordingly, I respectfully recommend that NAEG and Mr. D'Arrigo be found liable for violations of the Act under all the subsections of Section 17(a) and the Exchange Act Section 10(b) and Rule 10b-5.

### *B. Registration Requirements*

Sections 5(a) and 5(c) of the Act, 15 U.S.C. §§ 77e(a) and 77e(c), prohibit anyone from using "any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise" or carrying or causing to be carried through "the mails or in interstate commerce, by any means or instruments of transportation," securities "for the purpose of sale or for delivery after sale" without a registration statement for such securities or while the registration subject to a refusal or stop order or Commission proceeding or examination. 15 U.S.C. §§ 77e(a). "Section 5 [of the Act] is a strict liability statute that does not require a showing of scienter or negligence." *SEC v. Core Bus. One, Inc.*, Nos. 24-2104, 24-2105, 2025 WL 3066349, at *2 (2d. Cir. 2025).

Without the required registration statements in effect or valid exemptions from having those registration statements, Defaulting Defendants solicited investors through telephone, email, and text messages to sign subscription agreements and purchase NAEG common stock. (Compl. ¶¶ 18–21, 26–27, 67.) Consequently, NAEG investors purchased subscription agreements and stock totaling at least $3.43 million in investor proceeds and contributed their funds by check or wire transfers. (*Id.* ¶¶ 18, 20–21.)

Accordingly, I respectfully recommend that NAEG and Mr. D'Arrigo be found liable for violations Sections 5(a) and (c) of the Act.

**VI. Relief**

The Commission requests permanent injunctions against NAEG and Mr. D'Arrigo from "future violations of securities laws the Complaint charges them with having violated." (Pl. Mem. at 14.)

Moreover, the Commission requests the following relief against Mr. D'Arrigo: disgorgement in the amount of $958,437.27 plus prejudgment interest thereon, the imposition of a civil monetary penalty in the amount of $958,437.27, and permanent bars from serving as an officer and director of a public company or participating in any penny stock offering. (*Id.* at 14–15.)

***A. Permanent Injunctions against NAEG and Mr. D'Arrigo***

Pursuant to Section 6(c) of the Act, the Commission may seek a permanent injunction prohibiting defendants from engaging in conduct that violates any provision of the Act or any rule, regulation, or order thereunder. *See* 7 U.S.C. § 13a-1; *see also CFTC v. Kim*, No. 11-CV-1013 (DLC), 2011 WL 1642772, at *1 (S.D.N.Y. Apr. 15, 2011). To obtain this relief, the Commission need only show that a violation of the Act occurred and that there is a reasonable likelihood that the violation will be repeated. *CFTC v. Commodity Inv. Grp.*, No. 05-CV-5741 (HB), 2006 WL 353466, at *1 (S.D.N.Y. Feb. 11, 2006) (citing *CFTC v. British Am. Commodity Options*, 560 F. 2d 135, 141 (2d Cir. 1977)). A district court may infer the likelihood of future violations from the defendants' past unlawful conduct. *CFTC v. Kelly*, 736 F. Supp. 2d 801, 804 (S.D.N.Y. 2010) (citing *CFTC v. Am. Bd. of Trade, Inc.*, 803 F. 2d 1242, 1250–51 (2d Cir. 1986)).

NAEG's and Mr. D'Arrigo's misconduct was not limited to an isolated occurrence, but rather, consisted of conduct reoccurring over the course of more than five years. (*See* Compl. ¶ 18.) Repeated

acts of unlawful conduct show a likelihood of future violations.

As NAEG's CEO, founder, and director, Mr. D'Arrigo's role makes future violations more likely. *See SEC v. iShopnomarkup.com, Inc.*, 126 F. Supp. 3d 318, 330 (E.D.N.Y. 2015) (concluding that the defendant's "past claim to be an investment banker and claim to have worked on helping various public companies . . . gives him the ability to again seek a role as an officer or director at publicly traded companies and to again violate[ ] . . . federal securities laws").

Mr. D'Arrigo has also shown a lack of contrition for his and his company's actions through repeated failure to comply with the Court's orders to engage in discovery and other proceedings, his statements that "this case has no merit" and that the Commission "made stuff up," (Feb. 15, 2024 Hr'g Tr. 7:3, 6:19, Dkt. 69-5). Thus, I find that NAEG's and Mr. D'Arrigo's conduct indicates a likelihood of continued securities violations absent permanent injunctions.

Accordingly, I respectfully recommend that the Court impose permanent injunctions against NAEG and Mr. D'Arrigo in the manner detailed in the Annexed Proposed Order.

### *B. Disgorgement against Mr. D'Arrigo*

Sections 21(d)(3), (5), and (7) of the Exchange Act authorize district courts to order disgorgement as a remedy for securities law violations. 15 U.S.C. §§ 78u(d)(3), (5), (7). Courts have "broad equitable power" to order disgorgement upon a finding of federal securities law violations. *First Jersey Secs., Inc.*, 101 F.3d at 1474. Courts also have the authority to determine the amount of disgorgement. *Id.* at 1474–75. The amount of disgorgement ordered "need only be a reasonable approximation of profits causally connected to the violation," and "any risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (citing *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995)) (cleaned up). Thus, the burden shifts to the

defendants to dispute the requested disgorgement amount. *See SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996).

The Commission seeks to disgorge $958,437.27 from Mr. D'Arrigo, representing the total amount of misappropriated investor funds during the Relevant Period. (Pl. Mem. at 19.) To support its request for disgorgement, the Commission submitted NAEG's monthly bank statements showing: $860,188.68 was either transferred from NAEG's bank accounts to Mr. D'Arrigo's personal accounts or withdrawn in cash by Mr. D'Arrigo; $32,742.97 was transferred from NAEG's bank accounts to Ms. D'Arrigo's personal bank account; and Mr. D'Arrigo used $65,505.62 from NAEG bank accounts for personal purchases at restaurants, gas stations, grocery stores, drug stores, and other retailers. (*See* Diego Brucculeri Decl. ¶¶ 5–8, 10–11, Dkt. 70; *see also* Bank Statements, Dkts. 70-2, 70-3.) No evidence disputing the accuracy of the requested disgorgement amount has been submitted. Thus, I find that the Commission has provided a "reasonable approximation of profits causally connected to the violation," *see First Jersey Secs., Inc.*, 101 F.3d at 1474–75, to support its requested disgorgement amount.

Accordingly, I respectfully recommend that the Court order disgorgement in the amount of $958,437.27 against Mr. D'Arrigo.

### *C. Prejudgment Interest against Mr. D'Arrigo*

Courts have "broad discretion" to grant prejudgment interest and determine the rate used. *First Jersey Secs., Inc.*, 101 F.3d at 1474. The Second Circuit generally uses the Internal Revenue Service underpayment rate. *See id.* at 1476. Prejudgment interest is awarded "to deprive the wrongdoer of the benefit of holding the illicit gains over time." *SEC v. Contorinis*, 743 F.3d 296, 308 (2d Cir. 2014). Courts consider the following factors in granting prejudgment interest: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the

relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *First Jersey Secs., Inc.*, 101 F.3d at 1476. "In an enforcement action brought by a regulatory agency, the remedial purpose of the statute takes on special importance." *Id.*

Mr. D'Arrigo misappropriated NAEG investor money for his personal use (*see* Compl. ¶ 30), which weighs in favor of granting prejudgment interest, *see First Jersey Secs., Inc.*, 101 F.3d at 1477. This action is also brought by the Commission, and thus "the remedial purpose of the statute takes on special importance." *See id.* at 1476. Mr. D'Arrigo has also acted with knowledge in that he knew the money from investors was not going to NAEG, which was defunct, but rather going to enrich him and NAEG's salespersons, which further weigh in favor of ordering prejudgment interest. *See SEC v. Svoboda*, 409 F. Supp. 2d 331, 346 (S.D.N.Y. 2006) (concluding that "courts routinely have awarded prejudgment interest in SEC enforcement actions where the defendant's scheme evidences a high degree of bad intent"); *SEC v. Lipkin*, No. 99-CV-7357 (VVP), 2006 WL 435035, at *3 (E.D.N.Y. 2006). In light of "the goal of depriving culpable defendants of their unlawful gains, and the lack of any unfairness to defendants," *see First Jersey Secs., Inc.*, 101 F.3d at 1477, prejudgment interest is appropriate here. (Prejudgment Interest Report, Ex I to Decl., Dkt. 69-9).

The Commission requests that Mr. D'Arrigo pay prejudgment interest in the amount of $282,865.65, which it calculated by multiplying the disgorgement amount of $958,437.27 at the Internal Revenue Service underpayment rate from September 1, 2020 to April 30, 2025. (*See* Pl. Mem. at 20; *see also* SEC Prejudgment Interest Report, Ex. I to David Zetlin-Jones Decl., Dkt. No. 69-9.) According to the Commission, September 1, 2020 is the beginning of the first month after the date of Mr. D'Arrigo's final misappropriation of NAEG investor proceeds. (Zetlin-Jones Decl. ¶ 13.) No response has been filed disputing the amount of prejudgment interest or relevant time period.

Accordingly, I respectfully recommend that the Court grant prejudgment interest in the amount of $282,865.25 against Mr. D'Arrigo.

### *D. Civil Monetary Penalty against Mr. D'Arrigo*

Courts have jurisdiction to "authorize three tiers of monetary penalties for statutory violations" of the Act and the Exchange Act. *SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013); *see also* 15 U.S.C. § 77t(d)(1); 15 U.S.C. § 78u(d)(3). "Under each statute, a first-tier penalty may be imposed for any violation; a second-tier penalty may be imposed if the violation 'involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement'; a third-tier penalty may be imposed when, in addition to meeting the requirements of the second tier, the 'violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.'" *Razmilovic*, 738 F.3d at 38 (citing 15 U.S.C. § 77t(d)(1); 15 U.S.C. § 78u(d)(3)). "Each tier provides that, for each violation, the amount of penalty 'shall not exceed *the greater of*' 'a specified monetary amount *or* the defendant's 'gross amount of pecuniary gain'; the amounts specified for an individual defendant for the first, second, and third tiers, respectively, are $5,000, $50,000, and $100,000. *Id.* (citing 15 U.S.C. § 77t(d)(2) (emphasis added) and 15 U.S.C. § 78u(d)(3)(B) (same)). "Beyond setting maximum penalties, the statutes leave 'the actual amount of the penalty . . . up to the discretion of the district court.'" *Id.* (citing *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005)).

"Courts in this District have looked to a number of factors, including (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Tavella*, 77 F. Supp. 3d at 362–63 (cleaned up).

The Commission requests a civil penalty of $958,437.27, which is Mr. D'Arrigo's gross disgorgeable gain. *See* 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3)(B). Here, Mr. D'Arrigo's conduct was egregious because he used investor funds for his personal use. As discussed *supra*, he also showed a high degree of scienter. Moreover, NAEG's investors lost almost $1 million to Mr. D'Arrigo. (*See* Pl. Mem. at 19.) Given all these factors, I find that the Commission's requested civil penalty is appropriate.

Accordingly, I respectfully recommend that the Court approve a civil penalty in the amount of $958,437.27 against Mr. D'Arrigo.

### *E. Permanent Bars against Mr. D'Arrigo*

Plaintiff requests that the Court permanently bar Mr. D'Arrigo from serving as an officer or director of a public company and from participating in penny stock offering. (Pl. Mem. at 22–23.)

#### **1. <u>Director and Office Bar</u>**

Under Section 21(d)(2) of the Exchange Act, courts may "prohibit, conditionally or unconditionally, and permanently or for such period of time" "any person who violated Section 10(b)" of the Exchange Act "from acting as an officer or director of any issuer that has a class of securities registered . . . if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer." Courts have identified the following non-exclusive factors for making the unfitness assessment:

> (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.

*SEC v. Bankosky*, 716 F.3d 45, 48 (2d Cir. 2013) (citing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

The following factors weigh in favor of permanently barring Mr. D'Arrigo from serving as a director or officer of a private company: his conduct was particularly egregious given it occurred over a five-year period and he violated multiple provisions of the Act and Exchange Act; he violated securities laws as NAEG's co-founder, CEO, and director; he demonstrated a high degree of scienter because he knew that investors' money would not go to his company but to himself and his salespeople; he personally benefited from NAEG's fraudulent scheme; and there is a strong likelihood that his violations of securities law will continue because of his lack of contrition. Thus, I find that a permanent officer and director bar against Mr. D'Arrigo is warranted.

**2. <u>Penny Stock Bar</u>**

Section 21(d)(6) of the Exchange Act also permits courts to bar individuals "from participating in any future activity involving the offer of penny stock, which is any equity security bearing a price of less than five dollars except as provided in 17 C.F.R. § 240.3a51–1." *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007). "The standard for imposing a penny-stock bar essentially mirrors that for imposing an officer-or-director bar." SEC *v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007), *aff'd sub nom. SEC v. Altomare*, 300 F. App'x 70 (2d Cir. 2008); *see also SEC v. Gallison*, No. 15-CV-05456 (GBD) (SDA), 2023 WL 3004882, at *4 (S.D.N.Y. Feb. 4, 2023), *R. & R. adopted*, 2023 WL 3090857 (S.D.N.Y. Apr. 26, 2023).

Because NAEG stock is an equity security with a price of less than five dollars and does not fall within one of the exceptions as provided in 17 C.F.R. § 240.3a51–1, I find that it qualifies as penny stock. (*See* Pl. Mem. at 23); *see also* 15 U.S.C. 78(c)(51); 17 C.F.R. 230.3a51-1. For the same reasons set forth *supra*, I find that a permanent penny stock bar against Mr. D'Arrigo is appropriate here.

Accordingly, I respectfully recommend that the Court permanently bar Mr. D'Arrigo from serving as an officer and director of a public company and from participating in a penny stock offering.

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be GRANTED and that NAEG and Mr. D'Arrigo be found liable for the violations charged in Counts 1 through 3. I also respectfully recommend that the Court (1) grant the permanent injunctions detailed in the annexed Proposed Order, (2) order that Mr. D'Arrigo pay $958,437.27 as disgorgement plus $282,865.65 in prejudgment interest, and (3) impose a civil penalty of $958,437.27, and (4) permanently bar Mr. D'Arrigo from serving as a director or officer of a public company and from offering penny stock.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file an objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onodaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York

September 14, 2026